IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ISAIAH JAMAAL FIELDS,                      )
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )   C.A. No. 16-629 (MN)
                                           )
CONNECTIONS (LLC) and NURSE                )
PRACTIONER LOUISE RYAN,                    )
                                           )
                    Defendants.            )

## MEMORANDUM OPINION

Isaiah Jamaal Fields, Pro Se Plaintiff

Dana Spring Monzo, Lindsey E. Imbrogno, WHITE AND WILLIAMS LLP, Wilmington, DE – Attorneys for Defendants

November 28, 2018
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE:

Plaintiff Isaiah Fields ("Plaintiff" or "Mr. Fields") filed this action *pro se* against defendants Connections, Inc. ("Connections"), the medical provider within the Delaware prison system, and Louise Ryan ("Nurse Practitioner Ryan") (collectively "Defendants"), one of the nurse practitioners who provided care to Mr. Fields.[1] The Complaint, filed pursuant to 42 U.S.C. § 1983, alleges violations of the Eighth Amendment for failure to provide adequate medical treatment for injuries Mr. Fields sustained while playing basketball at Sussex Correctional Institution ("SCI"). (D.I. 1).

Pending before the Court are (1) a motion for summary judgment (D.I. 52) filed by Defendants and (2) a motion for summary judgment filed by Mr. Fields. (D.I. 62).[2] The Court has reviewed the motions for summary judgment, the supporting papers, and the responses. (D.I. 52, 53, 55, 60, 62, 64). It has also reviewed the allegations in the Complaint, the discovery responses submitted, and the significant medical record pertaining to Mr. Field's allegations. (D.I. 53 at Exhs. B, C; D.I. 61, D.I. 63). For the reasons discussed below, the Court will grant Defendants' motion for summary judgment (D.I. 52) and deny Plaintiff's motion (D.I. 62).

---

[1]  Mr. Fields initially sued several entities and individuals. (D.I. 1). This Court dismissed all of Mr. Fields's claims, *sua sponte*, except for the Eighth Amendment claims against Connections and Nurse Practitioner Ryan. (D.I. 10, D.I. 11)

[2]  The Scheduling Order entered in this case provided: "All summary judgment motions, with accompanying briefs and affidavits, if any, will be served and filed on or before August 6, 2018." (D.I. 33 at ¶ 5). It appears from Defendants' reply papers that additional documents (including recent medical records) were produced on August 27, 2018, after the August 6, 2018 deadline. (D.I. 60 at 1, n.1). Mr. Fields filed his motion for summary judgment shortly after that production of documents and appears to cite some of the more recent medical records in his motion. (D.I. 62, 63). Given the recent production of documents and Mr. Fields *pro se* status, the Court accepts the late-filed motion.

## I. FACTUAL BACKGROUND

On February 1, 2016, Mr. Fields injured his left ankle while playing basketball at SCI. (D.I. 1 at 6). He was apparently able to walk to the infirmary where he was seen by the nursing staff. (D.I. 53-4 at 119). He was given an ice pack and 400 mg of ibuprofen and instructed to report any increase in pain or immobility. (D.I. 53-4 at 119, 221). Nurse Practitioner Ryan examined Mr. Fields a few days later. (D.I. 53-4 at 119). She noted that he complained of pain in his ankle, but that he had a full range of motion in all four of his extremities. (D.I. 53-3 at 35; D.I. 53-4 at 119). She ordered an x-ray and instructed him to file a "sick call" if his symptoms did not improve. (D.I. 53-4 at 118). The x-ray showed "a normal left ankle." (*Id.*). Based on the record before the Court, this was the only interaction between Mr. Fields and Nurse Practitioner Ryan in connection with the allegations in the Complaint.

Thereafter, Mr. Fields continued to experience pain and to seek treatment for his injury. On February 9, 2016, Mr. Fields filed a "sick call," complaining of ankle pain, and saying he had not been examined, despite his prior visit to the infirmary and his examination by Nurse Practitioner Ryan. (D.I. 53-4 at 219). On that same day, Mr. Fields saw a nurse, who noted mild to moderate swelling in his ankle, a bruise on his heel, and limited flexion and extension of the ankle. (D.I. 53-4 at 118). The nurse educated Mr. Fields "on resting, icing and elevating" his leg. (D.I. 53-4 at 118-119). Mr. Fields again saw nurses on February 12, 19 and 24, 2016. (D.I. 53-4 at 118). The notes of these visit indicate mild swelling and a normal x-ray. (*Id.*).

Mr. Fields requested an MRI and filed grievances within the prison system to make his wishes known. (*Id.*). He was seen for two Level 1 grievances on February 24, 2016 and was informed that he could request to see a medical provider to come up with a new treatment plan. At that time, Mr. Fields said he would rather proceed with the grievance process instead. (*Id.*).

He continued to make "sick calls" for ankle pain and each time was seen by a nurse in response. (D.I. 53-4 at 89-118). Mr. Fields saw a nurse practitioner for his ankle pain again on May 20, 2016. (D.I. 53-4 at 113). At the time his gait was "normal" and he was given an ankle brace and ibuprofen. (*Id.*).

On August 4, 2016, a physician reviewed Mr. Fields's records. (D.I. 53-4 at 111). That physician pointed out in his note that it appeared that "the pain and physical changes are out of proportion to the complaints," but noted that they would "continue to address" the issue. (*Id.*). The physician saw Mr. Fields on August 17, 2016. (D.I. 53-4 at 110-111). He noted that Mr. Fields had not followed the medical advice to ice and rest his ankle when the initial sprain occurred and now the pain was worse. (*Id.*). Mr. Fields was given insoles for his shoes and crutches and instructed to take ibuprofen. (*Id.*). He continued to file "sick calls" and continued to be seen by the nurses in response. (D.I. 53-4 at 89-111, 150-221). Follow-up x-rays were taken and again found to be normal. (D.I. 53-4 at 109). The physician saw Mr. Fields for follow up on September 29, 2016, again noting Mr. Fields's failure to comply with treatment recommendations. (D.I. 53-4 at 109). He was diagnosed with a grade III ankle sprain and an e-consult was placed to orthopedics. (*Id.*). Thereafter, he filed more "sick calls," had more nurse evaluations, and was found to have normal range of motion. (D.I. 53-4 at 89-111, 150-221).

Another physician saw Mr. Fields on December 21, 2016. (D.I. 53-4 at 107-108). He noted that Mr. Fields had swelling, but a normal range of motion. (*Id.*). The physician ordered an ultrasound of his ankle to rule out blood clots. The ultrasound results were normal, and Mr. Fields was referred to physical therapy. (*Id.*). Mr. Fields attended multiple physical therapy sessions. (D.I. 53-4 100-107). Mr. Fields said he still had pain following physical therapy, and the physical therapist recommended that Mr. Fields be seen by "provider/MD for further evaluation and other

recommendations." (D.I. 53-4 at 100). Mr. Fields was seen by a physician on February 15 and February 22, 2017, and the physician placed a consult request for Mr. Fields to be seen by an outside physician as well as a request for an MRI. (*Id.* at 100-101).

Mr. Fields continued to be seen by the nurses. (D.I. 53-4 at 89-100; D.I. 63). He saw an outside orthopedist on August 7, 2017. (D.I. 53-4 at 91). The orthopedist diagnosed a chronic ankle sprain and prescribed a brace. (*Id.*). The orthopedist also gave Mr. Fields a steroid injection in his knee for a medial meniscal tear. (*Id.*). An MRI on his knee was ordered on September 27, 2017. (D.I. 53-4 at 89-91). Additional physical therapy was ordered, and a podiatry consult was requested. (*Id.*). An MRI of Mr. Field's left ankle occurred on January 9, 2018, and reportedly was normal. (D.I. 60 at 4; D.I. 61). Mr. Fields has continued to receive therapy for his injury. (D.I. 55 at 1; D.I. 63 at 5).

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All reasonable factual inferences must be made in a light most favorable to the nonmoving party. *Id.* at 255; *Patrick v. Moorman,* 536 F. App'x 255, 257 (3d Cir. 2013) (citing *Kopec v. Tate,* 361 F.3d 772, 775 (3d Cir. 2004)); *Thomas v. Cumberland County,* 749 F.3d 217, 222 (3d Cir. 2014) (citing *Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 535 (3d Cir. 2007)). The nonmoving party, however, bears the burden to establish the existence of each element of his case. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In doing so, the non-moving party must present

specific evidence from which a reasonable fact finder could conclude in his favor. *Anderson*, 477

U.S. at 248; *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Summary judgment

should be granted if no reasonable trier of fact could find for the non-moving party. *Radich v.

Goode*, 886 F.2d 1391, 1395 (3d Cir. 1989).

### B.    Eighth Amendment Violations for Failure to Provide Medical Care

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress . . . .

"In order to recover under § 1983, a plaintiff must show that the defendant, under color of

state law, subjected the plaintiff to a deprivation of a right, privilege, or immunity secured by the

constitution or laws of the United States." *Renda v. King*, 347 F.3d 550, 557 (3d Cir. 2003) (citing

42 U.S.C. § 1983); *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) ("Section 1983 is

not a source of substantive rights . . . the plaintiff must allege a violation of a federal right.").

Government officials performing discretionary functions are shielded from liability for

damages under 42 U.S.C. § 1983 "insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." *Sharrar v.

Felsing*, 128 F.3d 810, 826 (3d Cir. 1997); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982). It is the defendants' burden to establish they are entitled to qualified immunity. *Beers-

Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

Failure to provide medical care violates a detainee's Eighth Amendment rights if it rises to

a deliberate indifference to serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An

official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and does not take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[M]ere disagreement as to the proper medical treatment" does not support a claim of an Eighth Amendment violation. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted); *Monmouth Cty. Corr. Inst. v. Lanzaro*, 834 F.2d 326, 346 (3d. Cir. 1987). When medical care is provided, it is "presume[d] that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights")).

"[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 105-06. Indeed, medical "malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

## III.    DISCUSSION

"[P]ersonal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right." *Thorpe v. Little*, 804 F. Supp. 2d 174, 184 (D. Del. 2011) (citing *Williams v. Lackawanna Cty. Prison*, C.A. No. 4:CV-07-1137, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010)); *see also Nash v. Connections CSP, Inc.*, C.A. No. 16-896 (GMS) (D. Del. July 19, 2018) (D.I. 274 at 13) ("When bringing a §1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law.") (citing *West v. Atkins*, 487 U.S. 42, 48, (1988)); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (personal involvement required); *Stones v. McDonald*, 7 F. Supp. 3d 422, 435 (D. Del. 2014) (personal involvement required).

### 1.    Claims Against Nurse Practitioner Ryan.

The only person named in Plaintiff's Complaint is Nurse Practitioner Ryan. And the only specific assertion of malfeasance on the part of Nurse Practitioner Ryan is that she "could have prevented further 'Damage' had she placed me on crutches." (D.I. 62 at 1). There is no evidence that Nurse Practitioner Ryan was involved in any of Mr. Fields's care other than the February 5, 2016 visit. And there are no allegations or evidence that Nurse Practitioner Ryan is somehow responsible for the medical care Plaintiff received following her examination of him. Thus, the analysis of Nurse Practitioner Ryan's purported deliberate indifference is limited to that visit.

Notably, there is a distinction between claims that treatment was delayed or denied and claims that treatment occurred but was inadequate. *Pearson*, 850 F.3d at 535. The Eighth Amendment's proscription against cruel and unusual punishment mandates that incarcerated

offenders receive *adequate* medical care. "[A] prisoner [however] has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 Fed. App'x. 196, 203 (3d Cir. 2010) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)).

Moreover, there is a presumption that treatment is proper, absent evidence that there was a violation in the standard of care. *Pearson*, 850 F.3d at 535. Here, there is no allegation or evidence that Nurse Practitioner Ryan violated the standard of care. She examined Mr. Fields' ankle a few days after the injury. (D.I. 53-4 at 119). She noted that he complained of pain in his ankle and checked for range of motion. (D.I. 53-3 at 35; D.I. 53-4 119). She ordered an x-ray and instructed him to file a "sick call" if his symptoms did not improve. (D.I. 53-4 at 118). Instead, it appears that Mr. Fields received care but believes that something different should have been done. That, however, is not deliberate indifference and does not create a constitutional claim. *Estelle*, 429 U.S. at 107.[3] Mr. Fields's constitutional rights were satisfied when he was examined by Nurse Practitioner Ryan, a competent medical provider, shortly after his ankle injury. Therefore, Nurse Practitioner Ryan is entitled to summary judgment.

### 2. Claims Against Connections

When a plaintiff relies upon a theory of *respondeat superior* to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126,

---

[3] In *Estelle*, a prisoner was dissatisfied with the treatment he received for a back sprain. There, as here, the prisoner believed that more should have been done. The Supreme Court held that: "[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the [state] Tort Claims Act." 429 U.S. at 107.

1132 (D. Del. 1992). To establish that Connections is directly liable for the alleged constitutional violations, Plaintiff "must provide evidence that there was a relevant [Connections] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cty. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because *respondeat superior* or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories). Assuming the acts of Connections' employees have violated a person's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where the inadequacy of existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. *See Natale*, 318 F.3d at 584 (citations omitted).

"Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict." *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992) (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

Here, there is no evidence that Connections maintained an unconstitutional policy, practice, or custom. To the contrary, the record shows that Mr. Fields received (and apparently continues to receive) treatment for his complaints, including treatment by nurses, physical therapists, nurse practitioners, physician's assistants, and physicians, including a private orthopedist. He received medications, assistive devices, diagnostic studies, and accommodations for his injury. When Mr.

Fields voiced concerns about his health, whether through "sick calls" or grievances, he received a response and his needs were addressed. There is no evidence that the medical providers treated him in accordance with anything other than their medical judgment. As there is no evidence of an unconstitutional policy, practice, or custom, Connections is entitled to summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment (D.I. 52) and denies Plaintiff's cross motion for summary judgment. (D.I. 62). An appropriate order will follow.